**Viktor PETSCHEK and Mary Petschek, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

United States District Court
S. D. New York.

Oct. 14, 1963.

Sullivan & Cromwell, New York City, for plaintiffs; M. Bernard Aidinoff, Kendyl K. Monroe, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, for the United States; Bruno Lederer, Asst. U. S. Atty., of counsel.

LEVET, District Judge.

This is an action for the refund of federal income taxes in the amount of $4,897.03 which plaintiffs claim were erroneously collected from them for the years 1955 and 1956.

Both plaintiffs and defendant have moved for summary judgment.

*FACTS*

The facts are set forth in a stipulation entered into between the parties and may be summarized as follows:

Viktor and Mary Petschek, husband and wife, filed joint federal income tax returns for the years 1955 and 1956. They deducted, for the year 1955, certain legal and other fees, aggregating $5,171.51 which had been paid in that year in connection with the prosecution of certain claims before the Foreign Claims Settlement Commission with respect to property interests of Viktor Petschek confiscated by the government of Yugoslavia; they deducted, for the year 1956, legal and other fees aggregating $6,609.27 which had been paid in connection with proceedings before the Commission with respect to property interests of Viktor Petschek confiscated by the governments of Rumania and Yugoslavia. These deductions were disallowed by the Commissioner of Internal Revenue. The plaintiffs paid the tax deficiencies which resulted from the disallowance of the claimed deductions and are now seeking a refund of the additional taxes paid as a result of the Commissioner's determination.

Prior to World War II Viktor owned minority stock interests in three Yugoslav corporations. Two of these corporations were nationalized or confiscated by the government of Yugoslavia on December 5, 1946, and the third corporation was confiscated on January 25, 1947. The government of Yugoslavia did not pay any compensation at the time of the confiscations.

On August 21, 1948 the Yugoslav government paid $17,000,000 to the United States as part of an inter-governmental settlement of claims of the United States and its nationals against Yugoslavia arising from the nationalization of property in Yugoslavia. The International Claims Commission was created to consider claims of the United States and its nationals with respect to property confiscated or nationalized by Yugoslavia. The functions of the International Claims Commission were later transferred to the Foreign Claims Settlement Commission.

On June 29, 1951 Viktor and other members of his family filed a joint claim with the Commission wherein they sought compensation for the property interests confiscated by Yugoslavia. Under the Commission's rules a claimant had the burden of proving, inter alia, his ownership of the property, the value of the property, that he was a United States national, and that the property had been nationalized.

On December 30, 1954 the Commission rendered a final decision awarding Viktor $181,810 as compensation for the nationalized Yugoslav properties. Payments in respect of these awards totaling $155,246.37 were made to Victor on April 14, 1955, May 17, 1955, June 7, 1956 and December 9, 1957. It has been stipulated (Stip. par. 10) that such recovery was not includible in Viktor's gross income under the war loss recovery provisions of Section 1332(b) (1) of the Internal Revenue Code of 1954.

Prior to World War 11 Viktor held shares in a pool, which through intermediate corporations held shares of stock in a Rumanian corporation. On June 11, 1948 the corporation was nationalized by the Rumanian government without payment of compensation.

The Rumanian Claims Fund was created out of the net proceeds of property owned by Rumania or its nationals which was vested in the Alien Property Custodian or the Attorney General and liquidated pursuant to the Trading with the Enemy Act. The Foreign Claims Settlement Commission was empowered to determine the validity and amounts of claims of United States nationals against Rumania arising out of Rumania's failure to pay effective compensation for the nationalization of their property, and the United States Treasury was directed to pay from the Rumanian Claims Fund awards certified by the Commission on these claims.

On September 26, 1956 Viktor presented a claim relating to his Rumanian interests. The claimant's burden of proof as to Rumanian claims was essentially the same as for Yugoslav claims.

On June 15, 1959 the Commission rendered its final decision awarding Viktor $160,000 with respect to his Rumanian interests. Payments totalling $53,231.-50 were made to Viktor on August 12, 1959, December 28, 1959 and October 25, 1960. It has been stipulated (Stip. par. 15) that these payments were not includible in Viktors' gross income under the war loss recovery provisions of Section 1332(b) (1) of the Internal Revenue Code of 1954.

## THE RELEVANT STATUTES AND REGULATIONS

The relevant statutes include Section 212(1) and (2) and Section 265(1) of the Internal Revenue Code of 1954 (Title 26 U.S.C. §§ 212 and 265).

Section 212(1) and (2) is as follows:

"§ 212. Expenses for production of income

"In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

"(1) for the production or collection of income;

"(2) for the management, conservation, or maintenance of property held for the production of income; or

"(3) * * *."

Section 265(1) is as follows:

"§ 265. Expenses and interest relating to tax-exempt income

"No deduction shall be allowed for—

"(1) Expenses.—Any amount otherwise allowable as a deduction which is allocable to one or more classes of income other than interest (whether or not any amount of income of that class or classes is received or accrued) wholly exempt from the taxes imposed by this subtitle, or any amount otherwise allowable under section 212 (relating to expenses for production of income) which is allocable to interest (whether or not any amount of such interest is received or accrued) wholly exempt from the taxes imposed by this subtitle."

Section 1.212–1(a) (1) and (2) of the Regulations promulgated under the Internal Revenue Code of 1954 provides:

"(a) An expense may be deducted under section 212 only if—

"(1) It has been paid or incurred by the taxpayer during the taxable year (i) for the production or collection of income, which, if and when realized, will be required to be included in income for Federal income tax purposes, or (ii) for the management, conservation, or maintenance of property held for the production of such income, or (iii) in connection with the determination, collection, or refund of any tax; and

"(2) It is an ordinary and necessary expense for any of the purposes stated in subparagraph (1) of this paragraph."

Section 1.212–1(d) of the Regulations is as follows:

"(d) Expenses, to be deductible under section 212, must be 'ordinary and necessary'. Thus, such expenses must be reasonable in amount and must bear a reasonable and proximate relation to the production or collection of taxable income or to the management, conservation, or maintenance of property held for the production of income."

Section 1.212–1(e) of the Regulations in part is as follows:

" * * * no deduction is allowable under section 212 for any amount allocable to the production or collection of one or more classes of income which are not includible in gross income, or for any amount allocable to the management, conservation or maintenance of property held for the production of income which is not included in gross income. See section 265. * * *"

Section 1.265–1(b) of the Regulations is as follows:

"(b) Exempt income and nonexempt income. (1) As used in this section, the term 'class of exempt income' means any class of income (whether or not any amount of income of such class is received or accrued) wholly exempt from the taxes imposed by subtitle A of the Code. For purposes of this section, a class of income which is considered as wholly exempt from the taxes imposed by subtitle A includes any class of income which is

"(i) Wholly excluded from gross income under any provisions of subtitle A, or

"(ii) Wholly exempt from the taxes imposed by subtitle A under the provisions of any other law.

"(2) As used in this section the term 'nonexempt income' means any income which is required to be included in gross income."

## THE ISSUE

The clear-cut issue presented here is whether legal fees paid by plaintiffs as a result of presentation of claims before the Foreign Claims Settlement Commission arising by reason of confiscation of certain properties by the governments of Yugoslavia and Rumania are deductible by plaintiffs under Sections 212 and 265 of the Internal Revenue Code of 1954.

## SECTION 212

The plaintiffs erroneously contend that the expenses in issue were incurred "for the management, conservation, or maintenance of property held for the production of income." (See 212(2) of the Internal Revenue Code of 1954) It is patent from the stipulated facts that the recovery by plaintiffs from the Foreign Claims Settlement Commission as a result of the confiscation by Yugoslavia is not in such a category. The same conclusion is equally clear as to the recovery by plaintiffs from the Rumanian Claims Fund from the proceeds of property owned by Rumania or its nationals in the United States vesting in the Alien Property Custodian or the Attorney General and ultimately liquidated. None of the legal services were rendered to manage any property, or to conserve or maintain any property. The property had been confiscated. The plaintiffs sought reimbursements through the means afforded for the losses sustained by the acts of confiscation. None of the services came within the limitations of the statute.

Ruoff v. Commissioner, 277 F.2d 222 (3 Cir. 1960), cited by plaintiffs, is not in point. In Ruoff, the taxpayer sought and obtained recovery of property taken by the Attorney General allegedly pursuant to the Trading with the Enemy Act. The Attorney General had possession only. The attorney's charges were for services to prevent ultimate confiscation of property on the ground that the taxpayer was not an enemy national under the Act. The court properly held that "[t]he return of the property to taxpayer was a 'conservation' within the meaning of Section 23(a) (2)." (277 F. 2d p. 229) That is not the fact here.

In other words, this court cannot agree with the plaintiffs that they held any property to enable Section 212(1) and (2) to apply. A claim before the Foreign Claims Settlement Commission is in no wise equivalent to the plaintiffs' prior stock ownership. However, even if we assume that the claim before the Foreign Claims Settlement Commission is equivalent to actual stock ownership, the plaintiffs still may not deduct their legal expenses due to the application of Section 265 of the Internal Revenue Code of 1954.

## SECTION 265

By reason of the fact that the recovery itself is not includible in plaintiffs' gross income, the expenses to bring about such recovery are not deductible under Section 212. Moreover, Section 23(a) (2) of the Internal Revenue Code of 1939, in all relevant aspects, was identical to Section 212 of the Internal Revenue Code of 1954, and the regulations promulgated under Section 23(a) (2) (Regulations 111 Section 29.23(a)–15) contained provisions substantially identical to those above cited under Section 212.

Certain cases upon which plaintiffs rely in contending that the legal expenses are deductible under Section 212 are not applicable since the statutory prohibition against the deduction of such expenses (Section 265 of the Internal Revenue Act of 1954) did not appear until the Revenue Act of 1934. (Sen.Rep. No. 558, 73rd Cong. 2nd Sess., p. 28; H.Rep. No. 704, 73rd Cong. 2nd Sess., p. 27)

These cases, referred to by plaintiffs, to wit, Commissioner Speyer, 77 F.2d 824 (2 Cir.), cert. denied 296 U.S. 631, 56 S.Ct. 155, 80 L.Ed. 449 (1935), Commissioner v. Ullmann, 77 F.2d 827 (2 Cir.), cert. denied Helvering v. Ullman, 296 U.S. 631, 56 S.Ct. 155, 80 L.Ed 449 (1935), and Pink v. United States, 19 Am.Fed.Tax Rep. 1330 (1937) were all determined under Acts previous to that of 1934 and which Acts made no reference to whether the expenses deducted were incurred in procuring property which was not taxable. It is clear that the law as to deduction of expenses allocable to non-taxable income was first changed by Section 24(a) (5) of the Revenue Act of 1934. (Pink v. United States, 105 F.2d 183, 185 (2 Cir. 1939) [not related to the Pink case previously cited])

Other authorities cited by the plaintiffs, in my opinion, are inapplicable here:

Trust of Bingham v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670 (1945)—contesting an income tax deficiency upon winding up a trust.[1]

Allied Chemical Corporation v. United States, 305 F.2d 433 (Ct.Cl.1962)—unsuccessfully opposing the dissolution of a corporation in which taxpayer had stock.

Alleghany Corporation v. Commissioner, 28 T.C. 298 (1957)—opposing original reorganization plans as to corporation in which taxpayer held stock and in proposing other plans, later adopted.

United States v. Pate, 254 F.2d 480 (10 Cir. 1958)—services in obtaining judgment for negligent destruction of taxpayer's warehouse.

Walter S. Heller v. Commissioner, 2 T.C. 371 (1943), aff'd 147 F.2d 376 (9 Cir.), cert. denied 325 U.S. 868, 65 S.Ct. 1405, 89 L.Ed. 1987 (1945)—expenses incurred to pay value of dissenter's stock under a refusal to approve a merger.

Ticket Office Equipment Co. v. Commissioner, 20 T.C. 272 (1953), aff'd 213 F.2d 318 (2 Cir. 1954)—attorney's fees to negotiate insurance settlement to obtain insurance proceeds from partial destruction of a building by fire to extent not expended for replacement.

Hochschild v. Commissioner, 161 F.2d 817 (2 Cir. 1947)—taxpayer's defense of stockholders derivative action brought against him for alleged breach of fiduciary duty as director and officer of corporation.

Section 265 of the Internal Revenue Code of 1954, as already indicated, provides that no deduction shall be allowed for expenses allowable to income "wholly

exempt from the taxes imposed by this subtitle * * *." Moreover, the parties hereto have stipulated that the amounts received by plaintiffs pursuant to the awards of the Foreign Claims Settlement Commission are not includible in gross income because of the war loss recovery provisions of Section 1332(b) (1) of the Internal Revenue Code of 1954. (See stipulation, pars. 10 and 15)

With respect to the Yugoslav claims, Stipulation 10, agreed upon by the parties, is as follows:

"10. Payments in respect of these awards totaling $155,246.37 were made to Viktor on April 14, 1955, May 17, 1955, June 7, 1956 and December 9, 1957. Such recovery was not includable in Viktor's gross income under the war loss recovery provisions of § 1332(b) (1) of the Internal Revenue Code of 1954 for the following reasons: Viktor had claimed and was allowed for the year 1941 a war loss deduction pursuant to § 127(a) of the Internal Revenue Code of 1939. Since his income in 1941 had only been $10,830.66, most of the war loss deduction for 1941, which far exceeded his income, had not resulted in any tax reduction for Viktor. Under § 1332(b) (1) of the Internal Revenue Code of 1954 a war loss recovery is not includable in gross income to the extent that such recovery does not exceed that part of the allowable deductions in prior taxable years under § 127(a) which did not result in a reduction of tax. Since Viktor's recovery did not exceed those allowable deductions in prior taxable years which did not result in a reduction of tax, the recovery was not includable in gross income."

1. The plaintiffs are correct that the Bingham case made it clear that not all expenses incurred under Section 212 must produce taxable income to be deductible. "To read this section as requiring that expenses be paid for the production of income in order to be deductible, is to make unnecessary and to read out of the sec-

tion the provision for the deduction of expenses of management of property held for the production of income." 325 U.S. at 373, 65 S.Ct. at 1236–1237, 89 L.Ed. 1670. However, here we cannot find that the legal expenses were expended to maintain any property.

With respect to the Rumanian claims, Stipulation 15 was as follows:

"15. Payments in respect of this award totaling $53,231.50 were made to Viktor on August 12, 1959, December 28, 1959 and October 25, 1960. Such payments were not includible in Viktor's gross income under the war loss recovery provisions of Section 1332(b) (1) of the Internal Revenue Code of 1954 for the reasons set forth in paragraph 10, above."

The income which the taxpayers received as a result of the legal services now sought to be deducted was non-taxable since the recovery was not included in the plaintiffs' gross income under the war loss recovery provisions of Section 1332(b) (1) of the Internal Revenue Code of 1954. Under the applicable Treasury Regulations exempt income is income which is not required to be included in gross income. (See Treas.Reg. § 1.265–1(b) (2)) Post Office Square Co. v. United States, 191 F.Supp. 450 (D. Mass.1961). Any expenses allocable against such income are therefore not deductible. See Jones v. Commissioner, 231 F.2d 655 (3 Cir. 1956); National Engraving Co. v. Commissioner, 3 T.C. 178 (1944); Christian v. United States, 201 F.Supp. 155 (E.D.La.1962); Lewis v. Commissioner, 47 F.2d 32 (3 Cir. 1931) (Expenses incurred in earning exempt income). As stated by Judge Van Fossan in National Engraving Co. v. Commissioner, supra, "Once it be determined that an expense is allocable to exempt income, the item is not deductible and there is an end of the matter. Both sides of the equation must be considered. If the income is exempt from taxation expenses allocable to such income are not to be allowed as deductions. Any other treatment would result in double benefits by double exemption." 3 T.C. at 181.

In plaintiffs' reply brief they contend that in California and Hawaiian Sugar Refin. Corp. v. United States, 311 F.2d 235 (Ct.Cl.1962) the Court of Claims expressly held that Section 265 does not apply to legal expenses incurred in procuring a recovery which constitutes a non-taxable return of capital. There the taxpayer, an agricultural marketing cooperative, paid certain processing and floor stock taxes imposed by the Agricultural Adjustment Act of 1933, at a time when the corporation was exempt from federal income taxation. The taxes were subsequently declared to be unconstitutional; and the corporation recovered the refunds in a year when it was subject to federal income taxation.

The court seems to have held that the refund of taxes illegally collected is not to be treated as income for income tax purposes unless taxpayer has previously received tax benefit but that deductions for legal fees in securing the refund were proper when received in a year when taxpayer was subject to income taxes.

Whatever the application of the California case, supra, to the present case may be, I do not believe that it controls or even bears directly on the issues before me. At most, it allowed a taxpayer to deduct the legal expenses of recovering a refund of a tax paid and later held to be unconstitutional. The court seems to have held that the return was capital and not taxable income; in fact, was not "income" at all for income tax purposes. Moreover, I am inclined to agree with Judge Whitaker's statement in his dissent:

"It is erroneous to say that the return to the taxpayer of the processing and floor stock taxes paid by it in a former year was a 'return of capital.' In the prior year the taxpayer paid these taxes as a part of the cost of doing business; so, it seems to me, the return of them in a later year was a return of an expense item, using the word 'expense' in a broad sense, that is, the cost of realizing income. It was not the 'return of capital,' but the return of the expense item." 311 F.2d at 247

In any event, the California case did not involve a War Loss Recovery. In the combined light of Sections 212, 265, 1331

and 1332 of the Internal Revenue Code of 1954, I fail to find any authority in the California case, supra, for the position taken by the taxpayers here. It is axiomatic that a specific statute prevails over the general statute.

It is fundamental that the plaintiffs must, in order to recover a refund, show that their claim comes within the ambit of the appropriate statutes. The undisputed facts do not warrant this conclusion.

### CONCLUSION

Accordingly, in the overall construction of these statutes, I am constrained to deny the motion of plaintiffs for summary judgment and grant that of defendant. The defendant is entitled to its costs.

Settle order on notice.