CLEOPHUS L. KENNEDY and WANDA L. KENNEDY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kennedy v. Commissioner
Docket No. 2838-71.
United States Tax Court
T.C. Memo 1973-15; 1973 Tax Ct. Memo LEXIS 273; 32 T.C.M. (CCH) 52; T.C.M. (RIA) 73015; January 23, 1973, Filed Elijah W. Ratcliff, for the petitioners. Robert H. Jones, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in petitioners' income tax for 1969 in the amount of $3,043.08, together with an addition to tax under section 6653(a) [1] in the amount of $152.15. The issues concern the correctness of numerous deductions taken by petitioners for: (1) miscellaneous "Employee Business Expenses," (2) child care expenses and insurance premiums, and (3) a casualty loss to petitioners' former *275 residence. 2 FINDINGS OF FACT
General. Petitioners Cleophus L. Kennedy and Wanda L. Kennedy (hereinafter petitioners or individually as Mr. Kennedy or Mrs. Kennedy) are husband and wife. They maintained their legal residence in Texas at the time of filing their petition. They filed a joint Federal income tax return and amended return for 1969 with the district director of internal revenue in Dallas, Texas. 1. Employee Business Expense Deductions. FINDINGS OF FACT
Throughout 1969, both petitioners worked in Houston, Texas. Mrs. Kennedy was employed as a full-time registered nurse at the M.D. Anderson Hospital of the University of Texas Medical Center (hereinafter hospital), and Mr. Kennedy was employed as a pharmacist at the Globe Pharmacy (hereinafter Globe). Petitioners were not required in connection with their employment at the hospital or Globe to incur any unreimbursed transportation or travel expenses. During the first 7 months of 1969, Mr. Kennedy considered the financial prospects of establishing a pharmacy *276 in either Houston or his hometown, Kilgore, Texas. Mr. Kennedy's 3 grandmother resided in Kilgore, and Mr. Kennedy made frequent trips there for the combined purposes of investigating business possibilities and visiting his grandmother. On or about July 1, 1969, while continuing his employment at Globe, Mr. Kennedy began preparing to go into business for himself in Houston. During July, August, and the early part of September, he purchased equipment, met with wholesalers and physcians, and did the necessary groundwork for organizing the Riverside Professional Pharmacy (hereinafter Riverside) to engage principally in the filling of drug prescriptions for sale to customers. Mr. Kennedy acquired his Texas State permit to sell over-the-counter ("legend") drugs on or about July 22, 1969, and his Federal permit to fill narcotics prescriptions on or about August 19, 1969. Riverside opened to the public and made its first sale on September 12, and was incorporated on September 15, 1969. [2]
*277 4 The following preopening expenditures were made after Mr. Kennedy had decided to establish his business but before Riverside was incorporated and were deducted by petitioners as "Employee Business Expenses" on their 1969 income tax return: Item No.
Nature of Expenditure
Amount Paid
Date(s) Paid
(1)
Three months' supply of
9/ 3/69
prescription labels
$25.40
9/11/69
(2)
Maintenance fee for
burglar alarm system
10.00
9/ 8/69
(3)
Purchase of hardware
3.29
8/15/69
(4)
Purchase of prescription-numbering machine
15.00
9/ 9/69
(5)
License fees paid to Comptroller of Public Accounts,
7/22/69
Texas State Board of Pharmacy,
8/ 2/69
and the Internal Revenue Service
15.67
8/19/69
(6)
Payment for telephone and installation
100.00
8/26/69
(7)
Purchase of cash register
250.00
9/ 5/69
(8)
Attorney's fee for incorporating Riverside
100.00
9/ 2/69
(9)
First and last months' rent on building
600.00
9/ 4/69
(10)
Purchase of typewriter, refrigerator, vacuum cleaner, and sundry office supplies
500.00
9/12/69 5 Additional expenditures were also deducted by petitioners as "Employee Business Expenses" but were *278 made over the course of the entire taxable year and relate, at least in part, to activities other than the Riverside business: (11) Petitioners deducted $4,367.01 as housing and board "away from home." Although both petitioners resided and worked in Houston on a full-time basis throughout 1969, Mr. Kennedy's grandmother's address in Kilgore, Texas, was given as their home address on their income tax return. The housing and board expenditures claimed as a deduction consist entirely of the cost of maintaining the Kennedy family while residing at 4223 Worrell in Houston. (12) Mr. Kennedy's uniforms at Globe and Mrs. Kennedy's dresses at the hospital were provided and laundered without any charge to petitioners. However, Mr. Kennedy's uniforms at Riverside and Mrs. Kennedy's nurse's cap, hosiery, and shoes were required in their employment and were purchased and maintained at petitioners' expense. The $1,303.24 deducted as professional uniform and apparel and laundry expense on their income tax return for 1969 represented mostly personal nondeductible expenses. The sum of $300 was expended for the purchase and care of clothing required or essential to their employment. (13) *279 Petitioners purchased a 1966 Ford in October of 1965 for $3,200 and a 1969 Volvo in January of 1969 for $4,500. Taking into account salvage values of $200 for the Ford and $500 for the Volvo, and a useful life of 5 years for each car, petitioners deducted $1,400 straight-line depreciation in 1969. Claimed expense deductions for gasoline, oil, repairs, and insurance for both vehicles totaled $525.80. Petitioners' 1969 income tax return states that both automobiles were used for business purposes 12 months and that the percentage of expense attributable to business was 100. However, the cars were used only for delivery of drugs at Riverside for 6 a period of 4 months (September - December). The percentages of business use during that period were approximately 75 for the Volvo and 40 for the Ford. Petitioners maintained no records pertaining to the use of the cars. (14) During 1969, petitioners issued checks totaling $106.69 made payable to the Diners Club and Kappa Alpha Psi, to cover the cost of entertaining physicians and "other people." The record does not substantiate (a) the time and place of the entertainment, (b) the business purpose of the expense, or (c) the business *280 relationship to petitioners of the persons entertained. (15) In February 1969, petitioners incurred a service charge of $3.60 in connection with their personal checking account. They also incurred and paid charges totaling $6.51 for printed checks in February and June, 1969. OPINION
Items (1) - (10). All the items numbered (1) through (10) were expenditures made by Mr. Kennedy individually before Riverside was incorporated. As to these items, petitioners contend only that they are "Employee Business Expenses" deductible under section 162(a). [3] In order to 7 qualify for deduction under section 162(a), expenditures must be incurred in carrying on a trade of business. Thus, the factual question presented is whether Mr. Kennedy was engaged in a trade or business at the time the expenditures were made. *281 Ordinarily, carrying on a trade or business "involves holding one's self out to others as engaged in the selling of goods or services." Deputy v. du Pont, 308 U.S. 488, 499 (1940). [Even] though a taxpayer has made a firm decision to enter into business and over a considerable period of time spent money in preparation for entering that business, he still has not "engaged in carrying on any trade or business" within the intendment of section 162(a) until such time as the business has begun to function as a going concern and performed those activities for which it was organized. [n7] [Footnote omitted.] Richmond Television Corp. v. United States, 345 F. 2d 901, 907 (C.A. 4, 1965), vacated and remanded on other grounds 382 U.S. 68 (1965) (see also the cases cited therein). 8 Riverside did not begin to function as a going concern until the date it first opened its doors to the public - September 12, 1969. Albeit Mr. Kennedy was legally capable of filling prescriptions at an earlier date because of having acquired the requisite licenses, *282 the ability to transact business does not satisfy the "carrying on" requirement of the statute. Therefore, we hold that none of the pharmacy-related expenditures made prior to opening on September 12, 1969, is deductible by petitioners under section 162(a). Mr. Kennedy's preopening expenditures were incurred in creating a business which would ultimately produce income taxable to Riverside after incorporation. These expenditures, therefore, should be treated as contributions to the capital of Riverside and reflected in the basis of the corporation's stock owned by Mr. Kennedy. Some of the items (e.g., the cash register, typewriter, refrigerator, etc.) may have a useful life in excess of a single tax year, and the corporation may recover through depreciation deductions the investment in them. Item (11). The housing and board expenses incurred while petitioners were living and working in Houston, Texas, are nondeductible "personal, living, or family expenses" 9 within the meaning of section 262; they do not qualify under section 162(a) (2) as traveling expenses incurred while "away from home in the pursuit of a trade or business." See Ronald D. Kroll, 49 T.C. 557, 561-562 (1968). *283 Petitioners' tax home was in Houston where they lived and worked. That petitioners regarded Kilgore, Texas, rather than Houston, as their domicile does not aid their cause. See Jones v. Commissioner, 444 F. 2d 508, 509-510 (C.A. 5, 1971), affirming 54 T.C. 734 (1970). Item (12). The record shows that at least a portion of the professional uniform and apparel and laundry expenses claimed by petitioners is attributable to items of clothing "required or essential in an employment," and "not suitable for general or personal wear and * * * [are] not so worn." Ronald D. Kroll, supra at 566; see also Rev. Rul. 70-474, 1970-2 C.B. 35. Under the principle of Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930), we have found that petitioners incurred deductible clothing and laundry expenses of $300 during 1969. Item (13). We think the $1,925.84 claimed automobile expenses and depreciation based upon 100-percent-business use during 1969 must be reduced to represent only the proportionate business use of the vehicles during the 4 months that 10 Riverside was actively conducting its business. Petitioners were not *284 required by their employers at Globe or the hospital to incur unreimbursed transportation expenses. Accordingly, petitioners are allowed a $380 automobile expense deduction. Cf. Cohan v. Commissioner, supra. Item (14). Because of petitioners' failure to satisfy the substantiation requirement of section 274(d) (2), [4] no amount may be deducted for entertainment expenses. The statutory language, set forth in the margin, describes the kind of substantiation required for entertainment expenses, and petitioners offered none of the evidence needed to support the claimed deduction. *285 Item (15). None of the banking expenses deducted by petitioners is allowed because the expenses relate to the use of their personal checking account. 2. Child Care Expense; Insurance Premiums. FINDINGS OF FACT
On their 1969 income tax return, petitioners deducted as a medical expense, under the heading "Texas Medical Center," payments in the amount of $1,101.50. The University of Texas Medical Center operated a child care center for the benefit of the employees of the hospital so that such employees with children could work on a full-time basis. Petitioners' son, Cleophus L. Kennedy, Jr., attended the child care center during all of 1969, and payments in the above amount were made for his care. No part of the claimed deduction represents payments made for medical care. Petitioners' adjusted gross income on their 1969 joint return was $25,579.79. 12 During 1969, Mr. Kennedy was the owner of two ordinary and term life insurance policies with the Prudential Insurance Company of America on which he paid premiums totaling $369.81. Mr. Kennedy also paid $216.91 in premiums to the American National Insurance Company under policies indemnifying him against the loss of *286 his life and the loss of his income through disability. On their return, petitioners deducted $586.73, the total premiums paid, as a medical expense. OPINION
Petitioners' payments totaling $1,101.50 to the child care center of the Texas Medical Center were not made for the "diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body," within the meaning of section 213(a) and (e). Rather, these payments covered the cost of the care of their son and enabled Mrs. Kennedy to be gainfully employed as a registered nurse at the M.D. Anderson Hospital throughout 1969. Accordingly, such payments are personal, living, or family expenses, nondeductible under section 262. The exception to section 262 provided in section 214 for child care expenses does not apply. No deduction under section 214 is allowable in this case because petitioners' adjusted gross income of $25,579.79, shown on their return, subjects the 13 otherwise allowable deduction to the limitation of section 214(b) (2) (B). [5]
*287 Petitioners' claimed medical expense deductions for premium payments totaling $586.73 on four insurance policies also are not allowable. Section 213 allows a medical expense deduction for premiums paid on insurance which covers "medical care," sec. 213(a) and (e) (1) (C), but none of the policies here in question covers "medical care" as that term is defined in section 213(e) (1) (A). The premiums are, therefore, nondeductible personal expenses. See sections 213(e) (2) and 262, and section 1.213-1(e) (4) (i) (a), Income Tax Regs. 14 3. Casualty Loss. FINDINGS OF FACT
In early 1969, petitioners sold their personal residence at 5250 Pomander, Houston, Texas, to Jeanette Barnes and moved to 4223 Worrell, Houston, Texas. Barnes later defaulted on her mortgage payments, and sometime prior to June 25, 1969, the United Mortgage Servicing Corporation (hereinafter the mortgage company) repossessed the property. The foreclosure resulted in an unsatisfied lien which the mortgage company tried to collect from Mr. Kennedy. Around June 25, 1969, petitioners *288 discovered that their former residence had been vandalized. Soon thereafter, petitioners submitted to the Texas Southern Insurance Agency (hereinafter the insurance agency) a "Claim for Compensation for Loss Incurred Through Theft and Mischief," stating that the losses incurred were covered by a designated policy issued by The Camden Fire Insurance Association of Camden, New Jersey (hereinafter the insurance company), which named Mr. Kennedy as the insured. The total claim, based on petitioners' estimate of the current replacement values of the stolen or damaged property, amounted to $1,750. The insurance agency denied the claim on the grounds that Mr. Kennedy, although originally named in the policy, had assigned the 15 policy to Barnes. Eventually, the insurance agency estimated the loss at $269, and because the policy contained a "$50-deductible" provision, the insurance company paid $219 to the mortgage company. Petitioners deducted $1,750 on their 1969 income tax return as a casualty loss based upon their unsatisfied insurance claim. OPINION
Although the factual background of this issue is meager, the evidence adduced at trial created insoluble doubt as to whether *289 petitioners owned or had any basis in the property at the time the loss occurred. The mere fact that the mortgage company asserted a claim against petitioners for the balance remaining unpaid following repossession of the property from Barnes does not show that the property was owned by petitioners or that they had any basis therein. Proof of their basis in the residence at the time of the vandalism is, of course, a prerequisite to showing that petitioners sustained a deductible loss under section 165(a) and (c) (3). [6]
*290 Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted. ↩
2. On line 14 of Form 1040, petitioners included $2,000 as "Other income." An attached statement explained: Two thousand ($2,000.00) Other Income represents value of Stock Certificates issued to Cleophus L. Kennedy by Riverside Professional Pharmacy, Inc. when it assumed the proprietorship of Riverside Professional Pharmacy, during the taxable year. The record shows that the stock ownership of Riverside was 100-percent controlled by Mr. Kennedy immediately after incorporation. ↩
3. SEC. 162. TRADE OF BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade of business; * * * * * * ↩
4. SEC. 274 DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (d) Substantiation Required. - No deduction shall be allowed - * * * (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or * * * unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations. ↩
5. SEC. 214. EXPENSES FOR CARE OF CERTAIN DEPENDENTS. (b) Limitations. - * * * (2) Working wives and husbands with incapacitated wives. - In the case of a woman who is married and in the case of a husband whose wife is incapacitated, the deduction under subsection (a) - * * * (B) shall be reduced by the amount (if any) by which the adjusted gross income of the taxpayer and his spouse exceeds $6,000. * * * ↩
6. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * (c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - * * * (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100. * * * 16 Mr. Kennedy testified that he had sold the house, but, for some reason which he did not understand, the mortgage company asserted that he still had legal title at the time of the vandalism. The insurance agency refused to honor petitioners' claim because of questions as to the ownership of the property and the party insured under the policy. Ultimately, the insurance agency treated Barnes as the owner of the policy and the residence, and the insurance company paid $219 on the insurance claim to the mortgage company. Moreover, there was no concrete evidence to establish the values of the stolen or damaged property before and after the casualty. See section 1.165-7(b) (1), Income Tax Regs. In light of the few facts which do appear in the record and the absence of any positive proof demonstrating petitioners' ownership or basis or the amount of the loss, we must disallow the claimed deduction in its entirety. 17 As explained in footnote 2 in our Findings, petitioners included $2,000 as "Other income" on their return. This amount is stated to represent the value of the stock Mr. Kennedy received in exchange for assets transferred to Riverside upon its incorporation. Since section 351(a) is a nonelective provision, it appears that this $2,000 is not recognizable gain and that the Rule 50 computation should eliminate this item from petitioners' taxable income. If there are any reasons why this is not the case, they may be brought to the attention of the Court in connection with the Rule 50 computation. Respondent has conceded that petitioners are entitled to the following deductions not allowed in the notice of deficiency: Interest expense
$417.20
General sales tax
143.10
State and local gasoline tax
10.00
Preparation of 1968 tax return
10.00
Texas Board of Nurse Examiners
4.00
Texas State Board of Pharmacy
10.00
Houston Pharmacy Association
35.00
Educational literature
3.67
In addition, respondent has conceded that petitioners are not liable for the determined addition to tax under section 6653(a). Decision will be entered under Rule 50. ↩