CARLDON O. HASKINS and ERNESTINE G. HASKINS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; THOMAS D. MAGRUDER and BAE K. MAGRUDER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Haskins v. Commissioner
Docket Nos. 14223-80, 14224-80.
United States Tax Court
T.C. Memo 1982-730; 1982 Tax Ct. Memo LEXIS 15; 45 T.C.M. (CCH) 359; T.C.M. (RIA) 82730; December 21, 1982. J. Kearney Dossett, for the petitioners. Frank Simmons, for the respondent. RAUM
MEMORNADUM OPINION RAUM, Judge: In these consolidated cases, the Commissioner determined income tax deficiencies against petitioners Carldon O. Haskins and Ernestine G. Haskins of $6,015.44 and $974 for the calendar years 1976 and 1977, respectively, and income tax deficiencies of $7,890.83 and $9,303.28 against petitioners Thomas D. Magruder and Bae K. Magruder for these same respective years. After a number of concessions by the petitioners in each docket, there remains for decision but a single issue: whether the Commissioner properly disallowed deductions for ground *16 rents with respect to the period prior to the opening of a shopping center which was constructed by the petitioners' partnership on leased land during 1976 and 1977, where no rental income was in turn received or payable during or with respect to that prior period. These cases were submitted on the basis of a stipulation of facts. The petitioners in each case are married and were residents of McComb, Mississippi, when they filed their respective petitions herein. They filed joint Federal income tax returns for 1976 and 1977 with the Internal Revenue Service Center in Atlanta, Georgia. Since the wives, Ernestine G. Haskins and Bae K. Magruder, are petitioners only by virtue of having filed joint returns with their husbands for the years in issue, references hereinafter to "petitioners" will be to Carldon O. Haskins and Thomas D. Magruder. For several years prior to 1976, petitioners engaged in various real estate transactions, particularly the construction and operation of shopping centers for lease to retailers. Their business organizations have been in the form of both corporations and partnerships, and in general they were the sole stockholders and the only partners. *17 On or about July 18, 1973, Thibodaux Commercial Developers, Inc. (Thibodaux), a Louisiana corporation all of the stock of which was owned by petitioners, entered into a lease (as lessee) with J.B. Levert Land Co., Inc. (as lessor), for a tract of land in Thibodaux, Louisiana. The lease commenced March 1, 1975, for a term of 70 years, and the initial monthly rental was $1,065. Another corporation, all of the stock of which was owned by petitioners, Iberia Commercial Developers, Inc. (Iberia), paid Levert $12,183.60 on January 26, 1976, as rent (plus interest) due under the Thibodaux-Levert lease for the period March 1, 1975-January 31, 1976. Iberia also paid the $1,065 monthly rent through the remainder of 1976. The stipulation does not disclose why these payments were made by Iberia, but all of Iberia's checks indicated that the payments were for Thibodaux, and the payments were charged to a loan account on Iberia's books. Thibodaux was inactive and did not maintain formal records; it did not record these payments or formally recognize any obligation to Iberia on account thereof. No deduction was claimed by Thibodaux on its income tax returns for these rental payments. [1] *18 On October 25, 1974, Thibodaux, as lessor, entered into a 20-year lease with T.G. & Y. Stores Co. (T.G. & Y.) for 50,000 square feet of retail space in a shopping center which petitioners planned to build on the Levert land. Construction was to be completed during February 1976. The term of the lease was to start when the lessee's store opened for business or 60 days after all specified construction requirements and conditions were met, whichever occurred first. A subsequent amendment of the lease changed the time for completion of construction from February 1976 to September 1976. During June 1976, petitioners, as partners, obtained construction financing to build the "Plaza Del Rienzi Shopping Center" on the Levert land, and construction began between 30 and 90 days thereafter. On June 23, 1976, articles of partnership were executed for "C. O. Haskins and T. D. Magruder, a Partnership" (the partnership). Petitioners each contributed $495 to the partnership in exchange for 49.5 percent pertnership interests, and $10 was contributed by Commercial Developers, Inc., another *19 corporation all of the stock of which was owned by petitioners, for a one percent interest. At about this same time, the partnership's name was substituted for Thibodaux on the Levert ground lease. In respect of the T.G. & Y. lease, this change had already taken place, as reflected in an amendment dated January 5, 1976, which showed "C. O. Haskins and T. D. Magruder, a General Partnership d/b/a Plaza Del Rienzi" as the lessor instead of Thibodaux. On September 15, 1976, the partnership paid off the loan account to Iberia in the amount of $20,753.60, and charged this payment to a "rents paid" account. On February 7, 1977, the partnership again paid the new outstanding loan balance to Iberia and also charged this payment to "rents paid". After January 1977, the partnership made payments directly to Levert in the amount of $1,065 per month through July 1977, and $1,598.34 per month thereafter. The Plaza del Rienzi Shopping Center opened on August 12, 1977, and this is the first day for which the partnership received rental income. The partnership maintained its books and filed its tax returns on the cash method of accounting, and losses reflected on the partnership's returns were *20 claimed pro rata by each petitioner as a partner on his individual return. [2] On its returns for 1976 and 1977, the partnership claimed deductions for various expenses incurred prior to August 12, 1977, and included in these "preopening" expenses were ground rents in the amounts of $23,430 [3] for 1976 and $7,455 for 1977. The Commissioner disallowed deductions for all of the "preopening" expenses, and, with the exception of the ground rents, petitioners have conceded the correctness of the Commissioner's determination. The only issue remaining for our consideration, then, is whether the Commissioner properly disallowed the claimed "preopening" ground rent deductions. [4]
*21 Section 162(a), I.R.C. 1954, allows as a deduction in computing taxable income "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business "(emphasis supplied), including, inter alia, "rentals or other payments required to be made as a condition to the continued use or possession, for purpose of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity". Section 162(a)(3). In this case, the issue centers on the "carrying on any trade or business" requirement of the statute. The Government views liability for all ground rent incurred by petitioners prior to August 12, 1977, as a nondeductible "preopening" expense, contending that petitioners were not "carrying on" the business of operating a shopping center until it was open for business and rental income was received. In support of its position, the Government relies upon a well-established line of cases holding that *22 "carrying on" a business means, in effect, "the beginning of actual business operations", Goodwin v. Commissioner,75 T.C. 424, 433 (1980); see Richmond Television Corp. v. United States,345 F.2d 901, 905 et seq. (4th Cir. 1965), vacated and remanded on other grounds, 382 U.S. 68 (1965); Bennett Paper Corp. v. Commissioner,78 T.C. 458, 463 (1982); Estate of Boyd v. Commissioner,76 T.C. 646, 666 (1981). The government points out also that business operations have been said to commence when a business first "open[s] its doors to the public". Kennedy v. Commissioner,32 T.C.M. 52, 55, 42 P-H Memo T.C. par. 73,015, (1973). We agree that, in accordance with the cited cases, petitioners were not "carrying on" the business of operating a shopping center until August 12, 1977. [5] The expenses for ground rent incurred prior to that date are therefore not deductible under section 162. *23 Petitioners rely upon certain cases in support of their position, notably the early case of 379 Madison Avenue,Inc. v. Commissioner,60 F. 2d 68 (2d Cir. 1932), revg. 23 B.T.A. 29 (1931); and Blitzer v. United States,684 F. 2d 874 (Ct. Cl. 1982). The issue is primarily of a factual nature, and the cases in this field are therefore difficult to reconcile with one another. As was stated by the Supreme Court in a different context in Welch v. Helvering,290 U.S. 111, 116 (1933), "[t]o attempt to harmonize them would be a futile task. They involve the appreciation of particular situations, at times with borderline conclusions". And, as was stated in Petschek v. United States,335 F. 2d 734, 737 (2d Cir. 1964), again in a somewhat different context in support of a result difficult to distinguish from other cases in the field, "[i]f the distinction seems fragile, that is not unusual in cases near a frontier, with large hinterlands on either side". In 379 Madison Avenue, the Court found enough activity, including the actual receipt of advance rentals from the lessees, to justify its *24 conclusion that the lessor was engaged in "carrying on" a trade or business. Although there is broad language, largely dicta, in Blitzer that would support petitioners' position here, the actual holding of the court denied the taxpayers their claimed deduction. In the instant case, we are inclined to follow the general line of cases referred to above, and we find that the preopening rentals paid by petitioners' partnership to its lessor in the circumstances present here were not paid during a taxable period when it was in fact "carrying on any trade or business". Petitioners contend also that the deductibility of rental payments under section 162(a) does not turn upon whether a taxpayer is "carrying on" a trade or business, as required by the introductory language of section 162(a), but rather upon a lesser standard: whether the rentals are incurred "for purposes of" the business under section 162(a)(3). As evidence that this subsection sets out a distinct standard, which does not require the actual commencement of business operations, our attention is directed to Flambeau Plastics Corp. v. Commissioner,22 T.C.M. 112, 32 P-H Memo T.C. par. 63,029 (1963). *25 In that case, a taxpayer with an existing manufacturing business agreed to lease land and a building to be erected by a lessor for use in the taxpayer's business. The taxpayer sought to deduct rental payments from October 28, 1957, through the end of its fiscal year on June 30, 1958, even though the building was not substantially completed until June 1 of that year. The Government apparently argued that the taxpayer did not have "use or possession" of the property, within the meaning of section 162(a)(3), until the building was completed and occupied, and that the prior rental payments were therefore not deductible. The Court held, however, that the fact that the taxpayer's representative was on the property daily to supervise construction, and that completed warehouse and manufacturing space was utilized by the taxpayer prior to June 1, was evidence that the taxpayer had both use and possession of the property "for purposes of" its existing trade or business during the entire construction period. Thus, the holding was not that the language "for purposes of the trade or business" eliminates the existence of an operating business as a prerequisite for rental deductions under *26 section 162(a)(3), but rather that rental payments may further the purposes of an existing business even if they do not yet relate directly to the "carrying on" of that business. If the taxpayer is not "carrying on" any business, as explicitly required in the initial language of section 162(a), then (a)(3) cannot apply. For the foregoing reasons, Decisions will be entered for the respondent.
Footnotes
1. The record does not disclose whether these payments were reflected in any way on Iberia's returns.↩
2. The petitioners split the losses 50-50, in apparent disregard of the one percent interest of their wholly-owned corporation, Commercial Developers. The Government has agreed on brief to treat each petitioner as a 50 percent partner for this purpose. ↩
3. The stipulation of facts shows this figure to be $23,400, which could be a typographical error, because the 1976 ground rent claimed on the partnership's tax return, the amount disallowed in both statutory notices of deficiency, and the amount referred to by petitioners and the Government on brief is $23,430. ↩
4. The parties have not addressed themselves to any alternative treatment for these rental payments if they are not deductible in the years in question. Accordingly, we similarly will not consider any such arguable alternative treatment, as perhaps the capitalization of the rents and their possible amortization.↩
5. No issue has been raised by petitioners as to whether this shopping center project had a sufficient nexus to their prior activities so as to render it a part of an existing business, and the stipulated facts provide no basis for a conclusion in petitioners' favor on this point. Indeed, what does appear suggests that petitioners would not prevail on the basis of any such contention. Cf. Madison Gas & Electric Co. v. Commissioner,72 T.C. 521, 566-567 (1979), affd. 633 F. 2d 512 (7th Cir. 1980); Goodwin v. Commissioner,75 T.C. 424, 434-435 (1980), affd.     F. 2d     (3d Cir. 1982)↩.