Anthony J. ACCARDO and Clarice Accardo, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 90–2649.

United States Court of Appeals, Seventh Circuit.

Argued May 16, 1991.

Decided Aug. 21, 1991.

Rehearing Denied Oct. 9, 1991.

**446**

Carl M. Walsh (argued), Brian J. Walsh, Chicago, Ill., for petitioners-appellants.

Abraham N.M. Shashy, Jr., I.R.S., Richard Farber, Gary R. Allen, Charles Bricken (argued), Dept. of Justice, Tax Div., Appellate Section, Charles S. Casazza, U.S. Tax Court, Washington, D.C., for respondent-appellee.

Before CUMMINGS, CUDAHY and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

This case presents the somewhat paradoxical situation in which the IRS treats convicted taxpayers more favorably than acquitted taxpayers. The Internal Revenue Code affords a tax break for the former while the latter may not deduct any portion of the same kind of expense. We must decide whether a taxpayer may deduct the legal fees committed to the successful defense of a criminal prosecution under the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1961 *et seq.* (1970)). Anthony J. Accardo was charged along with fourteen other defendants for racketeering activities which allegedly earned the defendants $2 million in kickbacks from a union insurance program. See *United States v. Guzzino,* 810 F.2d 687, 690 (7th Cir.1987), certiorari denied, 481 U.S. 1030, 107 S.Ct. 1957, 95 L.Ed.2d 529 Accardo was one of three defendants acquitted, while the remaining eight were convicted and sentenced.[1] *Id.* at 690 n. 6. In this appeal, Accardo relies solely on Section 212(2) of the Internal Revenue Code, which permits deductions of funds expended "for the management, conservation, or maintenance of property" in the course of business. Because the statutory scheme under RICO includes a general forfeiture provision that potentially reaches the assets of a taxpayer which are derived from racketeering activity, this taxpayer contends that he defended the suit in part to protect his assets (*i.e.* several certificates of deposit) from forfeiture. The Commissioner of Internal Revenue denied the taxpayer his deduction, finding there to be substantial deficiencies instead.

Petitioners Anthony J. and Clarice Accardo[2] filed suit in the United States Tax Court to challenge the asserted deficiencies. The major deficiencies for 1981 and 1982 added up to approximately $50,000, because the Commissioner ruled that they may not deduct legal expenses totaling $224,500 incurred in successfully defending the RICO criminal prosecution. In arriving at this conclusion, the Commissioner denied that Section 212(2) of the Internal Revenue Code permitted the deduction claimed by the taxpayer. The Commissioner also claimed the following additions to tax: $2,491 under Section 6653(a)(1) which imposes a penalty for the negligent underpayment of income taxes; 50 percent of the interest due on the deficiency under Section 6653(a)(2); and $9,903 under Section 6661 governing the substantial understatement of income tax. The Tax Court upheld the

---

1. The RICO convictions of the eight guilty defendants were upheld in *United States v. Caporale,* 806 F.2d 1487, 1497 (11th Cir.1986), certiorari denied *sub nom. Gopman v. United States,* 482 U.S. 917, 107 S.Ct. 3191, 96 L.Ed.2d 679.

2. Clarice Accardo is a party only because she filed a joint income tax return with her husband. In this opinion, all references to "taxpayer" will be to Anthony J. Accardo.

amounts claimed by the Commissioner. Its opinion is reported in 94 T.C. 96 (No. 8) (1990). We affirm.

## I. DEDUCTIBILITY OF LEGAL FEES IN DEFENDING RICO PROSECUTION

■ The RICO indictment claimed that because of his racketeering activity, taxpayer's stake in the proceeds of racketeering and in the interests acquired through the use of those proceeds was subject to forfeiture as provided by then 18 U.S.C. § 1963(a) (1970).[3] Taxpayer asserts that he was attempting to protect against forfeiture assets that included three certificates of deposit totaling $1,500,000 and condominiums in River Forest, Illinois, and Indian Wells, California, used as personal residences. However, the Tax Court found that taxpayer did not use funds acquired from racketeering activities to purchase those assets (App. A13). Therefore, the assets were not forfeitable under 18 U.S.C. § 1963(a) which then provided:

> Whoever violates any provision of section 1962 of this chapter shall be fined not more than $25,000 or imprisoned not more than twenty years, or both, and shall forfeit to the United States (1) any interest he has acquired or maintained in violation of section 1962, and (2) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which he has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962.

The non-forfeitability of the certificates of deposit represents an argument that has been overlooked by both sides in this appeal. Obviously, it goes against taxpayer's interest to claim that the assets are not subject to forfeiture, for it is the risk of loss that forms the sole basis of his claimed deduction. The Commissioner, on the other hand, has apparently decided as a tactical matter to assume that the certificates were subject to forfeiture but that taxpayer's legal fees were not devoted to the protection of the asset. By taking this position, the Commissioner, acting on the Government's behalf, seemingly leaves the door open for forfeiture of this type of asset in the event that taxpayer has been convicted of racketeering activity and also denying the deduction.

The law of RICO, however, clearly prevents forfeiture of this type of asset. Despite the fact that RICO's forfeiture penalty differs fundamentally from other federal forfeiture provisions in that a RICO forfeiture represents an *in personam* criminal penalty rather than an *in rem* proceeding to take possession of specific property, this does not subject any and all property belonging to a convicted criminal to forfeiture under RICO. Courts have interpreted Section 1963(a) of the RICO statute to require that as a prerequisite to the forfeiture, the Government must prove that at the time of conviction the forfeitable assets were profits and proceeds stemming from racketeering activity. *United States v. Ginsburg*, 773 F.2d 798, 800 (7th Cir.1985) (*en banc*), certiorari denied, 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302. As discussed in *Ginsburg*, the RICO forfeiture "deprives that defendant of all of the profits and proceeds that he has acquired *through racketeering activity* * * * and does not attach until the defendant is convicted of the crime for which the forfeiture is imposed." *Id.* at 801 (emphasis supplied). Accordingly, as long as the asset was acquired through illegal activity at the time of conviction, it is forfeitable in its entire amount, even if the defendant transfers the actual property to another party. *Id.* at 802 ("a racketeer who dissipates the profits or proceeds of his racketeering activity on wine, women, and song has profited from organized crime" and may be required under Section 1963(a) to forfeit an amount equal to his ill-gotten gain); *United States*

---

3. Subsection (a) of Section 1963 has subsequently been amended on two occasions—in 1984, Act of October 12, 1984, Pub.L. No. 98–473, 1984 U.S.Code Cong. & Admin.News 3182 (98 Stat.) 2192, and, most recently, in 1988, Act of November 18, 1988, Pub.L. No. 100–690 (102 Stat.) 4403. The statute now provides for tougher penalties and increases the power of the courts to order forfeiture of assets to the United States.

*v. Madeoy*, 912 F.2d 1486, 1495 (D.C.Cir. 1990) (Government could order forfeiture of all properties related to RICO enterprise), certiorari denied, —— U.S. ——, 111 S.Ct. 1008, 112 L.Ed.2d 1091; *United States v. Angiulo*, 897 F.2d 1169, 1210 (1st Cir.1990) (comparing "proceeds or profits and property affording a source of influence [over a racketeering enterprise] which are only subject to forfeiture to the extent they are tainted by the racketeering activity" to illegally obtained interests *"in* an enterprise, which are forfeitable regardless of percentage of taint") (emphasis in original), certiorari denied *sub nom. Granito v. United States*, —— U.S. ——, 111 S.Ct. 130, 112 L.Ed.2d 98; *United States v. Busher*, 817 F.2d 1409, 1412–1413 (9th Cir.1987) (stating that "Section 1963 is purposely broad * * * [and was] designed to totally separate a racketeer from the enterprise he operates"), citing *Russello v. United States*, 464 U.S. 16, 26–27, 104 S.Ct. 296, 302, 78 L.Ed.2d 17 (1983).

The forfeiture provision of Section 1963(a) does not encompass the certificates of deposit in this case. The Government has not carried its burden and shown that the certificates would have been forfeitable, for as the Tax Court found (App. A13), there is no connection between them and the alleged racketeering activity, here the alleged interference in union affairs and misappropriation of funds from employee benefit plans (App. A11). This finding is unchallenged. Moreover, taxpayer was acquitted of any RICO violations stemming from this prosecution. His innocence prevents the Government from seizing the certificates and bars taxpayer from claiming any connection between the certificates and racketeering activity.

Taxpayer hinges his argument on the connection between the RICO forfeiture and the certificates of deposit, because he has found no other basis for claiming the deduction of legal fees. He asserts that if found guilty, he might have to turn over his certificates in order to satisfy the judgment of over $2 million in RICO criminal forfeiture. This is where the paradox noted above creeps into the picture. The Com-

missioner (Br. 16) concedes that those defendants who were found guilty as a result of the same RICO prosecution could properly claim a deduction for legal fees under Section 162(a) "as expenses paid or incurred * * * in carrying on any trade or business," because they were found to be engaged in the racketeering business. Section 162(a) does not draw any distinction between legitimate and illegitimate business enterprises. But since the jury acquitted taxpayer of involvement in the racketeering business, he could not claim a Section 162(a) deduction and therefore chose to rely instead on Section 212(2).

Ironically, because taxpayer was not convicted of racketeering—indeed, we have no idea what his business is because taxpayer refused to answer the Commissioner's interrogatory concerning his occupation, citing the fifth amendment privilege against self-incrimination (Doc. 18, Record on Appeal)—taxpayer was reduced to claim that he incurred the legal fees to conserve and maintain the three certificates of deposit which were income-producing property within the meaning of Section 212(2) of the Code.

Taxpayer was mistaken as to the operation of RICO's forfeiture provision in this case. Pursuant to then Section 1963(a) of the Criminal Code (18 U.S.C. § 1963(a) (1970)), the indictment sought the forfeiture only of interests acquired and maintained from racketeering or acquired through the use of the proceeds therefrom (App. A12). No racketeering funds were used to purchase the three certificates of deposit (App. A13). Moreover, taxpayer wishes to claim a deduction for the entire amount of the legal fees incurred in defending against the RICO prosecution. He implies that if the entire amount is deductible, then all of the legal fees were directed at protecting his certificates of deposit while none of the fees were incurred to conserve and maintain the condominiums and to keep him from prison. In any event, since the three certificates of deposit were not obtained from the alleged racketeering activities or from proceeds thereof, they were not forfeitable under then 18 U.S.C. § 1963(a), thus destroying taxpayer's argu-

ment that he spent $224,500 to conserve or maintain the certificates under Section 212(2) of the Code.

## A. *Deductibility of legal fees generally*

In holding that no part of the legal fees is deductible, the Tax Court cited *Lykes v. United States*, 343 U.S. 118, 72 S.Ct. 585, 96 L.Ed. 791 a case that explains the limitations on the deductibility of legal fees. In *Lykes*, the Supreme Court held that under Section 23(a)(2) of the 1939 Code, the predecessor to Section 212(2) of the 1954 Internal Revenue Code,[4] the legal fees committed to contesting the amount of federal gift tax were not deductible. In discussing its holding, the Court stated that "[l]egal expenses do not become deductible merely because they are paid for services which relieve a taxpayer of liability. * * * It is not a ground for defense that the claim, if justified, will consume income-producing property of the defendant." *Id.* at 124–126, 72 S.Ct. at 588–589. Although Congress passed a statute specifically reversing *Lykes* as it applies to gift tax, the decision applies to the case at hand, insofar as it logically establishes that the remote possibility that income will be consumed in order to satisfy an adverse judgment is not enough to permit deductibility for the conservation of assets. The nexus between the legal fee and the business asset must be closer than that.

Here the link between the legal fee and the certificate of deposit is similarly attenuated. Taxpayer hired a lawyer because he was indicted for racketeering activity, a federal crime. Additionally, because RICO's forfeiture provision also prevents the criminal from savoring the fruits of his ill-gotten gain, a finding of liability will expose the defendant to financial liability as well as prison. However, because his certificates of deposit do not relate directly to the alleged activity (App. A13), the link between the legal fee and the claimed deduction is non-existent.

In *United States v. Gilmore*, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963) a case interpreting *Lykes*, the Supreme Court offered further clarification of the principle that compels our analysis. In *Gilmore*, the Court held that a taxpayer in a divorce proceeding may not deduct legal fees incurred to resist the claims by his wife to certain of his income-producing assets. The Court stated that the possibility that an adverse judgment against the taxpayer would require him to hand over some of his assets to his wife does not permit him to deduct the legal fees. Rather, the Court looked to "the origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer." *Id.* at 49, 83 S.Ct. at 629. Therefore, because the taxpayer in *Gilmore* paid a lawyer to defend him in divorce proceedings, the possibility that a finding of liability might require him to satisfy his wife's claims by turning over income-producing assets was insufficient grounds to invoke Section 23(a)(2), the precursor to Section 212(2).

We need not dwell further on the distinction between the origin and consequences of the claim, because under the version of Section 1963(a) of the Criminal Code in force at the time of trial, forfeiture of these certificates of deposit was not even a consequence of a successful RICO claim against taxpayer. The Government's racketeering claim arose in connection with taxpayer's alleged racketeering activities but had no connection with either the certificates of deposit or the condominiums. Therefore the costs of defending against the racketeering indictment are non-deductible personal expenses under Section 262 of the Code. *Glimco v. Commissioner*, 397 F.2d 537, 540 (7th Cir.1968), certiorari denied, 393 U.S. 981, 89 S.Ct. 452, 21 L.Ed.2d 442. Unlike the eight other defendants who were named in the indictment and convicted, taxpayer was acquitted of involvement in racketeering activity. Therefore, he was not engaged in a business

---

**4.** Section 212(2), on which taxpayer relies, was codified in the Internal Revenue Code of 1954 (26 U.S.C.), 68A Stat. 69, and remains unchanged by the Tax Reform Act of 1986, Pub.L. 99–514, 100 Stat. 2085, Sec. 2.

(albeit an illegal business) that would permit him to deduct the legal fees expended to defend himself. It is true that had he been convicted, taxpayer would have been able to deduct his legal fees under Section 162(a) of the Code, *Commissioner v. Tellier*, 383 U.S. 687, 86 S.Ct. 1118, 16 L.Ed.2d 185 (1966), as did the convicted defendants, but that would be a different case. The other defendants did not rely on Section 212(2) for their deduction, claiming that their income-producing assets might be subject to forfeiture under RICO. Rather, the deduction there stemmed from a finding that the defendants were engaged in a business, and that their legal fees were specifically connected to the conduct of their business.

■ In addition to the principles established by *Lykes, Gilmore* and *Glimco*, the deductibility of a taxpayer's legal fees does not turn on the nature of the type of property to be surrendered on a finding of liability even if a potential judgment against the taxpayer might be satisfied therefrom. Consistent with the Supreme Court's decisions in *Lykes* and *Gilmore*, the Treasury Regulations under Section 212 provide:

> An expense (not otherwise deductible) paid or incurred by an individual in determining or contesting a liability asserted against him does not become deductible by reason of the fact that property held by him for the production of income may be required to be used or sold for the purpose of satisfying such liability.

Treas.Reg. § 1.212–1(m) (26 C.F.R.). As noted above, taxpayer does not claim a deduction independent from the legal fees supposedly committed to defend the certificates from forfeiture. Therefore, the fact that the certificates produce income for the taxpayer does not mean that if they were forfeitable (which they were not)[5], then taxpayer could deduct them. A court must look, as *Gilmore* commands, to the origin and nature of the claim.

Taxpayer relies further on *Ruoff v. Commissioner*, 277 F.2d 222 (3d Cir.1960), and *Petschek v. United States*, 335 F.2d 734 (2d Cir.1964), for the proposition that legal fees may be deducted when they are paid to conserve income producing property. This argument begs the question, for both decisions result from a finding that the legal fees were committed by the respective taxpayers to conserve property that was in fact linked with a trade or business. In *Ruoff*, the court permitted the deduction under Section 23(a)(2) (the precursor to Section 212(2)), because the Attorney General of the United States had seized all of the taxpayer's income-producing property pursuant to the Trading with the Enemy Act of 1915, 50 U.S.C. Appendix, Section 1 *et seq. Ruoff*, 277 F.2d at 229. Having actually lost possession of the property, the taxpayer was entitled to deduct the cost of retaining a lawyer in the attempt to retrieve it. The *Ruoff* taxpayer paid out legal fees specifically to defend particular property seized by the Government. *Id.*

The Second Circuit applied the same reasoning in *Petschek*, permitting the taxpayer in that case to deduct legal fees expended in an unsuccessful attempt to recover income-producing property—namely, the stock held by taxpayer in four corporations which had been seized by the nations of Yugoslavia and Rumania as part of each government's respective program for nationalizing private enterprise. 335 F.2d at 735–736.

In contrast to *Ruoff* and *Petschek*, the taxpayer in the instant case did not forfeit or lose property. He hinges his deduction on a risk of loss that is entirely speculative. The United States did not and could not require the forfeiture of the taxpayer's certificates of deposit, because, as demonstrated above, the funds used to purchase them were not obtained through racketeering (App. A13), and therefore were not forfeitable under the version of Section 1963(a) in force at the time, *supra* at 447. Taxpayer's legal fees bear no relation to the "conservation or maintenance of property held for the production of income" within the meaning of Section 212(2), unlike the property at issue in either *Ruoff* or *Petschek*. This case therefore resembles *Gilmore*,

---

5. See then Section 1963(a) of the Criminal Code (18 U.S.C. § 1963(a)), *supra* at 447.

372 U.S. at 51–52, 83 S.Ct. at 630–631, rather than either *Ruoff* or *Petschek*, for the Government's claim here did not stem from taxpayer's racketeering activities, so that his legal expenses were not deductible under Section 212(2).

B. *Taxpayer's equitable estoppel argument*

At his criminal trial, taxpayer denied that he engaged in racketeering activities under RICO and the jury agreed. It is taxpayer's acquittal and his subsequent inability to deduct legal fees as a business expense that forms the basis of taxpayer's equitable estoppel argument. As noted earlier, the Code treats the guilty more favorably than the innocent. As taxpayer correctly recognized, had he been convicted for racketeering activity, he would have been able to claim his deduction under Section 162(a), for the legal fees would have originated out of the defense of criminal charges arising from the taxpayer's trade or business. In *Tellier*, 383 U.S. at 687, 86 S.Ct. at 1118, the Supreme Court upheld the deductibility of legal fees as a business expense under Section 162(a) of the Code, where they were incurred in the unsuccessful defense of a criminal prosecution for securities fraud. Despite the fact that the taxpayer's gains were proffered illegally, the Court recognized that it is income nonetheless, "taxed at a rate no higher and no lower than income from more conventional sources." *Id.* at 691, 86 S.Ct. at 1120. Therefore, the deductibility of expenses incurred in income-producing activities must be subject to the same analysis. If the Code does not distinguish between legally and illegally earned income for purposes of income tax, then the Commissioner may not apply the deductibility provision selectively, distinguishing between the convicted and the acquitted. The Court in *Tellier* found that to deny the business expense deduction would be to turn the Code into a punitive measure where none was authorized or intended by Congress. *Id.* at 694–695, 86 S.Ct. at 1122–1123. While *Tellier* would have allowed a Section 162(a) deduction if Accardo had been found to be in the racketeering business, taxpayer did not claim his deduction under that provision, nor was he found to be in that business.

Despite *Tellier*'s inapplicability to his case, taxpayer attempts to have us overlook the fact that his defense in the RICO prosecution ultimately convinced the jury that he was innocent. He asserts that the Government is estopped from denying the deductibility of the legal expenses because it previously argued that taxpayer was engaged in an illegal business activity. Therefore, according to taxpayer's equitable estoppel argument, the Government should be prevented from changing the position it took in the RICO prosecution, so that his legal fees should be deductible. This argument ignores taxpayer's unwavering denial of involvement in any racketeering activity and his acquittal at trial. In any event, because the assets were not forfeitable, taxpayer may not claim a deduction under Section 212(2).

Taxpayer also fails to satisfy the legal requirements of equitable estoppel. He did not show that he relied on any misrepresentation by the Government in changing his position for the worse, nor did the government make a misleading representation to him on which he reasonably relied to his detriment. Therefore, equitable estoppel does not apply. *Heckler v. Community Health Servs., Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984); *Black v. TIC Inv. Corp.*, 900 F.2d 112, 115 (7th Cir.1990).

## II. ADDITIONS TO TAX UNDER SECTIONS 6653 AND 6661 OF THE INTERNAL REVENUE CODE

Taxpayer claims finally that since his deductions under Section 212(2) of the Code were proper, there is no liability for additions to tax. This argument fails because we have held that his legal fees were not properly deducted. Taxpayer also contends that he relied upon advice of counsel and his tax preparer in claiming these deductions, so that a negligence penalty is unjustified. Because there was no basis for deductibility, this argument is also unpersuasive. As noted previously, the funds used to purchase the assets in question

were not obtained from racketeering (App. A13) and were not forfeitable under then Section 1963 of the Criminal Code, nor even sought under the indictment (App. A12). Moreover, *Gilmore, Lykes,* and Treasury Regulation § 1.212–1(m) foreclose the deduction of these legal expenses even if any forfeiture claim against taxpayer might have been satisfied out of his assets. Finally, the record does not show that taxpayer believed that the law supported deductibility of the legal fees.

A. *Negligent underpayment under Section 6653(a)*

 Taxpayer argues that deductibility of legal fees under Section 212(2) in a RICO prosecution presents a question of first impression. He also claims to have relied on the advice of his tax preparer in claiming the deduction. Therefore, taxpayer asks this Court to overturn the penalty he must bear for the negligent underpayment of taxes under Section 6653(a) (26 U.S.C.). Section 6653(a) of the Code acts as a check on taxpayers. If the Commissioner finds that a taxpayer has underpaid taxes, then he may recover the deficiency and may also impose an added penalty of five percent plus 50 percent of the interest attributable to the underpayment. Standard principles of negligence apply to the Commissioner's determination of underpayment, so that the penalty may be imposed when the taxpayer shows a "lack of due care or failure to do what a reasonable and ordinarily prudent [taxpayer] would do under the circumstances." *Marcello v. Commissioner,* 380 F.2d 499, 506 (5th Cir.1967). However, taxpayer carries the burden to prove that he was *not* negligent, because the Commissioner is deemed to be *prima facie* correct as to a determination of negligence or intentional disregard of the Code. *Neely v. Commissioner,* 85 T.C. 934, 947 (1985); *Luman v. Commissioner,* 79 T.C. 846, 860–861 (1982). Furthermore, the Tax Court's determination that taxpayer failed to meet his burden that he acted with due care is a finding of fact, reviewed under the clearly erroneous standard. *Skeen v. Commissioner,* 864 F.2d 93, 96 (9th Cir. 1989).

As shown above, RICO Section 1963(a) provides only for forfeiture of assets earned in connection with racketeering activity. Because the certificates of deposit were not forfeitable, taxpayer had no basis upon which to claim his deduction under Section 212(2). Moreover, taxpayer knew the tax law well enough to avoid claiming his deduction as a business expense under Section 162(a), and instead attempted to recharacterize the legal fees in different terms in order to receive favorable treatment under Section 212(2). This provision, as amply demonstrated by the cases discussing RICO forfeiture and the breadth of Section 212(2), does not afford taxpayer a credible argument that the law was unclear.

Additionally, taxpayer did not support with sufficient evidence his claim that he relied on the advice of counsel and his tax preparer in claiming his deduction of legal fees under Section 212(2). Even if the record had shown that taxpayer had relied in good faith on the advice of competent counsel, in contrast to taxpayer's assertion at oral argument, the Supreme Court's recent decision in *Cheek v. United States,* — U.S. ——, 111 S.Ct. 604, 611, 112 L.Ed.2d 617 (1991), would be of no avail because there the Court only held in a criminal case that the willful failure to pay taxes was not necessarily proven if the defendant truly believed the Internal Revenue Code did not treat wages as income. Whereas *Cheek* simply creates a jury question out of a defendant's interpretation of the Code, *id.* 111 S.Ct. at 613, Section 6653 imposes a burden of production on a taxpayer.

As the Tax Court noted in its order denying a motion to vacate its decision, Accardo failed to produce the required evidence that he relied upon his tax preparer or that the preparer gave him reasonable advice. Similarly, he has not shown that he received advice from his counsel, that he relied on it in good faith, and that any such reliance was reasonable. See *Betson v. Commissioner,* 802 F.2d 365, 372 (9th Cir.1986) (reversing imposition of negligence penalty where the record indicates that taxpayer

relied in good faith on the substantive advice of his accountant). That the signature of the accountant tax preparer appeared on Accardo's tax return is not enough. Taxpayer must demonstrate that he supplied all relevant information to his tax preparer and subsequently relied on the preparer's advice in erroneously claiming the deduction. *Pritchett v. Commissioner*, 63 T.C. 149, 174 (1974); *Pessin v. Commissioner*, 59 T.C. 473, 489 (1972). In the present case, the Tax Court properly upheld the addition to tax on the ground that the underpayment was negligent.

B. *Substantial underpayment of taxes under Section 6661*

In addition to the penalty imposed for negligent underpayment of tax, the Tax Court also imposed liability for addition to tax under Section 6661(a) of the Internal Revenue Code.[6] Under Section 6661(a) (26 U.S.C.), the taxpayer owes an addition to tax in an amount equal to 25 percent of the amount of the substantial underpayment. Section 6661(b)(1)(A) establishes that a taxpayer has substantially underpaid when the underpayment exceeds the greater of either 10 percent of the amount of tax due or $5,000.

Taxpayer makes no argument with respect to the $9,903 deficiency imposed by the Commissioner on account of taxpayer's substantial understatement of liability under Section 6661 of the Code. As noted above, taxpayer substantially understated his income tax liability for the two years in question within the meaning of Section 6661. The provision therefore will apply by virtue of the fact that taxpayer's understatement exceeded the limits set forth in the statute. However, Section 6661 permits a reduction of the penalty for understatement in either of two situations:

(1) if there is or was substantial authority for such treatment (26 U.S.C. § 6661(b)(2)(B)(i));

(2) if the relevant facts affecting the item's tax treatment are adequately dis-

closed in the return or in a statement attached to the return (26 U.S.C. § 6661(b)(2)(B)(ii)).

Additionally, Section 6661(c) permits waiver of the entire penalty for understatement "if there was reasonable cause for the understatement (or part thereof) and the taxpayer acted in good faith" (Section 6661(c) (26 U.S.C.)).

■ The Tax Court found that taxpayer did not meet any of the above conditions, so that he was not entitled to a reduction in or waiver of the penalty for understatement. Taxpayer's claim that there was substantial authority supporting the deduction of legal fees is undercut by Treasury Regulation 1.6661–3(b)(1), limiting "substantial authority" to situations in which "the weight of the authorities supporting the treatment is substantial in relation to the weight of the authorities supporting contrary positions." Treasury Regulations on Income Tax (23 C.F.R.). As the above discussion of the non-deductibility of taxpayer's legal fees amply demonstrates, there is a dearth of authority supporting his position, much less the balance of authorities required by the Treasury Regulation.

■ Furthermore, taxpayer did not provide relevant facts on his tax return sufficient to permit a reduction for adequate disclosure. He stated only that his deduction of $207,000 was for "Legal fees re conservation of property held for production of income." This assertion falls short of the exposition of relevant facts required under Section 6661(b)(2)(B)(ii). *Schirmer v. Commissioner*, 89 T.C. 277, 285–286 (1987) (mere listing of income, expenses and claimed depreciation did not constitute disclosure of relevant facts). Particularly where taxpayer lacked substantial authority for his position and where he appeared to think that his deduction presented a novel legal issue, the mere declaration of a deduction does not entitle taxpayer to a reduced penalty for understatement of tax.

6. Section 6661 was repealed effective December 19, 1989, and does not apply to tax returns due after December 31, 1989. Section 6662 of the Internal Revenue Code of 1986 now provides for the imposition of penalties for the substantial understatement of tax liability.

**454**

Finally, Section 6661(c) vests discretion in the Commissioner to reduce or waive the penalty for understatement if he believes that the taxpayer acted in good faith. As the preceding discussion of the penalty for negligent underpayment demonstrates, the record does not contain evidence of taxpayer's good faith. Given the absence of authority supporting his position, the Commissioner acted well within his discretion in concluding that the understatement was unreasonable.

The decision of the Tax Court is affirmed.