ROBERT LAVON HAWKINS AND PAMELA HAWKINS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hawkins v. Commissioner
Docket No. 1164-91
United States Tax Court
T.C. Memo 1993-517; 1993 Tax Ct. Memo LEXIS 528; 66 T.C.M. (CCH) 1228; November 9, 1993, Filed *528 Decision will be entered under Rule 155. Robert Lavon Hawkins and Pamela Hawkins, pro sese. [1]
James F. Mauro, for respondent. LARO
LARO
MEMORANDUM FINDINGS OF FACT AND OPINION LARO, Judge: This case is before the Court pursuant to a joint petition filed by Robert Lavon Hawkins and Pamela Hawkins for a redetermination of respondent's determinations contained in her separate notices of deficiency issued to them on October 25, 1990. Hereinafter, Robert Lavon Hawkins and Pamela Hawkins are collectively referred to as petitioners. Unless otherwise stated, all section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Respondent's notices of deficiency reflected her determinations of deficiencies *529 in, and additions to, petitioners' Federal income tax as follows: [2]
Robert Hawkins
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)
6653(a)(1)(A)
6653(a)(1)(B)
6654
1986
$ 324,345
$ 84,742
$ 17,117
$ 73,181
$ 16,360
1987
214,116
52,728
10,706
31,430
12,068
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)
6653(a)
6654
6662(a)
1988
$  66,288
$ 16,327
$  3,314
$  4,214
--  1989
344,905
86,226
23,326
$ 68,981
Pamela Hawkins
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)
6653(a)(1)(A)
6653(a)(1)(B)
6654
1986
$ 328,890
$ 82,223
$ 16,445
$ 71,005
$ 15,913
1987
203,673
50,918
10,184
30,352
12,335
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)
6653(a)
6654
6662(a)
1988
$  64,843
$ 16,211
$  3,242
$  4,147
--  1989
344,905
86,226
23,326
$ 68,981
Jeopardy assessments were made for all determinations. *530 The primary issue that the Court must decide is whether petitioners have shown error in respondent's computation of their unreported income under the net worth method. Petitioners' sole contention in this respect is that they received moneys during the taxable years in issue from a nontaxable source, i.e., a settlement of a personal injury lawsuit filed on behalf of Pamela Hawkins. We find that they did not. We must also decide whether petitioners are liable for the following additions to tax for all the taxable years in issue: (1) Failure to file timely, (2) negligence, and (3) failure to pay estimated tax. We find that they are liable for these additions to tax. [3]
*531 FINDINGS OF FACT Robert Hawkins resided at the Federal Penitentiary in Terre Haute, Indiana, and Pamela Hawkins resided in Lauderhill, Florida, when they filed their petition with this Court. Petitioners did not file individual income tax returns for the 1986, 1987, 1988, or 1989 taxable years. Robert Hawkins was an hourly wage employee of Chrysler Motor Corporation from 1972 through 1989. In 1987, Robert Hawkins received $ 30,719.46 in compensation from Chrysler; he never received more compensation from Chrysler in any other year. During each of the years in issue, petitioners received income from various securities, numerous rental properties, and numerous bank accounts. On May 9, 1989, Michigan law enforcement officers (Officers) raided petitioners' home in West Bloomfield, Michigan, and found approximately $ 1,159,420 in cash. Officers found the money stuffed in two pieces of luggage and in a secret compartment in an end table. The money was in bundles of $ 15,000 apiece; $ 15,000 was the price of a kilo of cocaine at that time. Officers also found traces of cocaine throughout the house, purported drug ledgers, stolen handguns, and other guns. Officers seized the cash *532 and approximately $ 1.9 million in other assets that Officers believed were associated with petitioners' alleged illegal drug activities. The raid resulted from a "tip" that Robert Hawkins was engaged in large scale drug trafficking. At a time when Robert Hawkins was unemployed and on probation for a previous drug offense, he (1) paid cash for the construction of a large home in an exclusive area in Michigan, (2) owned a second home in Florida, (3) owned several luxury items, such as expensive furs, gold and diamond jewelry, and assorted premium vehicles (e.g., an $ 82,000 Rolls Royce, a $ 57,000 Jaguar, and a $ 20,000 Bayliner boat), and (4) had over $ 1 million in various financial accounts. In 1990, a forfeiture trial was held before the Detroit Recorder's Court to determine whether petitioners' cash and other assets seized during the raid were proceeds traceable to an illegal drug trade conducted by petitioners. During that proceeding, petitioners argued that they received most of the approximately $ 3 million there in issue via the purported settlement of a personal injury lawsuit. [4]
*533 On July 23, 1990, the Detroit Recorder's Court: (1) Found that the cash and additional assets seized during the raid were associated with petitioners' illegal drug trade activities, and (2) ordered approximately $ 3 million of petitioners' assets forfeited. The trial court's judgment of forfeiture was affirmed by the Michigan Court of Appeals, except that the appeals court held that the trial court improperly ordered the forfeiture of petitioners' property in Florida. See In re Forfeiture of $ 1,159,420, 486 N.W.2d 326 (Mich. Ct. App. 1992). By means of an order dated May 14, 1993, the Michigan Supreme Court denied petitioners' application for leave to appeal. See Michigan, ex. rel. O'Hair v. $ 1,159,420 U.S. Currency, 503 N.W.2d 439 (Mich. 1993). The Detroit Recorder's Court specifically addressed and rejected petitioners' assertion that the assets were from a personal injury lawsuit, and not from an illegal drug trade. That court found petitioners' personal injury lawsuit to be merely a money-laundering scheme. In a separate proceeding, Robert Hawkins was found guilty of possession with intent to distribute cocaine and possession of firearms *534 in the course of drug trafficking, and was given a prison sentence of 38 years. The facts surrounding petitioners' so-called personal injury lawsuit are as follows: On October 1, 1985, petitioners instituted a personal injury lawsuit in the Macomb County Circuit Court against Margaret Wilson (Wilson). Allegedly, Wilson was an insurance saleswoman who during the course of her employment assaulted Pamela Hawkins. The employer of Wilson was not named in the lawsuit and petitioners could not name Wilson's company or its location; Wilson did not appear, or testify with respect to petitioners' personal injury lawsuit, at petitioners' forfeiture trial. On October 15, 1985, a woman, purportedly Wilson, was served with notice of petitioners' lawsuit at a restaurant in Detroit, Michigan. Petitioners generally alleged the following four averments in their complaint: (1) On April 24, 1983, Wilson came to their home and tried to sell them insurance. (2) When Pamela Hawkins told Wilson that she was not interested in buying insurance, Wilson became verbally and physically abusive. Wilson "beat-up" Pamela Hawkins and severely injured her. Pamela Hawkins received permanent injuries, including *535 scars and pain and suffering, and required an abortion of her unborn fetus, all to the damage of Pamela Hawkins in excess of $ 1 million. (3) Pamela Hawkins had an abortion in April 1983, due to the trauma caused by Wilson. (4) Robert Hawkins suffered a loss of the comfort and companionship of Pamela Hawkins. [5]
As part of the lawsuit, Pamela Hawkins prayed for judgment against Wilson for whatever amount she was found to be entitled, together with costs and attorney fees for the litigation. Robert Hawkins prayed for judgment against Wilson for $ 100,000, together with costs *536 and attorney fees for the litigation. On November 8, 1985, petitioners filed a default judgment against Wilson with the Macomb County Circuit Court, for failure to answer. Approximately 1 month later, on December 3, 1985, Wilson allegedly gave petitioners $ 500,000 as a partial payment in settlement of the lawsuit. Robert Hawkins allegedly negotiated the settlement directly with Wilson. Allegedly, Wilson was not represented by counsel, and Robert Hawkins' attorney advised him to negotiate with Wilson on his own behalf. Between January 1986 and January 1987, Wilson purportedly paid petitioners an additional $ 1.65 million in cash in settlement of the lawsuit as follows: $ 640,000 on January 3, 1986; $ 10,000 on January 13, 1986; $ 250,000 on January 5, 1987; and $ 750,000 at another time in January 1987. Petitioners and Wilson did not execute a release in connection with the purported settlement. On January 8, 1987, petitioners filed a Motion to Set Aside Dismissal and for Entry of Consent Judgment with the Macomb County Circuit Court. Petitioners' Motion was accompanied by an affidavit of their attorney and a Stipulation for Entry of Consent Judgment. The petitioners" attorney *537 alleged in the affidavit that: (1) On January 5, 1987, petitioners' lawsuit was dismissed for lack of progress, and (2) on January 6, 1987, petitioners and Wilson reached agreement on the settlement of the lawsuit and signed a stipulation for entry of a consent judgment. The Stipulation for Entry of Consent Judgment provided that petitioners and Wilson "hereby stipulate to entry of a consent judgment against [Wilson] in the amount of $ 750,000". The circuit court's file does not indicate that the Consent Judgment was entered by the court or signed by the judge; the file merely contains a stipulation of consent judgment. OPINION This case involves mainly a factual determination. Petitioners contend that they received moneys from a nontaxable source, i.e., a settlement with Wilson on account of a personal injury to Pamela Hawkins, and that respondent erred in failing to take the alleged settlement into account when computing petitioners' unreported income under the net worth method in the notices of deficiency. [6] The burden of proof is on petitioners. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); see also Parks v. Commissioner, 94 T.C. 654, 658-659 (1990); *538 Tokarski v. Commissioner, 87 T.C. 74, 75-76 (1986). This case requires the Court to determine the truth of a matter using evidence consisting primarily of oral testimony. The Court must observe each witness' manner on the stand, including his or her perception, memory, and sincerity, and determine whether the witness is testifying truthfully. In so doing, the Court must be wary of making the courtroom a refuge for the proficient liar or a quagmire in which an honest litigant *539 is overcome. Truth, or the path thereto, is sometimes obvious to the trier of fact; in other cases, such as this, truth is temporarily obstructed by obstacles deliberately placed on the path. Diaz v. Commissioner, 58 T.C. 560, 564 (1972). As is customary in this Court, we have treated petitioners with respect and viewed their personal injury story in an unbiased manner. Although petitioners' story is imaginative, we find it incredible and unbelievable. We conclude that petitioners contrived their personal injury story to explain their large cash supply and other assets. By arguing it in this proceeding, petitioners have stretched the Court's patience and insulted our intelligence by expecting us to believe them. We decline to dissect and refute petitioners' story piece by piece; such an effort would only lend credibility to the absurd. We hold that petitioners have failed to meet their burden of proving that respondent's determinations of deficiencies in any of the years in issue are erroneous, and, accordingly, sustain these determinations. We now turn to the three additions to tax determined by respondent. Respondent determined an addition *540 to tax under section 6651(a) for all the years in issue because petitioners failed to file timely a Federal income tax return. In order to avoid this addition to tax, petitioners must prove that their failure to file was: (1) Due to reasonable cause and (2) not due to willful neglect. Sec. 6651(a); Rule 142(a); United States v. Boyle, 469 U.S. 241, 245 (1985); Buelow v. Commissioner, 970 F.2d 412, 415 (7th Cir. 1992), affg. T.C. Memo. 1990-219; In re Stanford, 979 F.2d 1511, 1512 (11th Cir. 1992); Stovall v. Commissioner, 762 F.2d 891, 895 (11th Cir. 1985), affg. T.C. Memo. 1983-450; Fleming v. United States, 648 F.2d 1122, 1124 (7th Cir. 1981). A failure to file timely a Federal income tax return is due to reasonable cause if the taxpayer exercised ordinary business care and prudence, and, nevertheless, was unable to file the return within the prescribed time. In re Stanford, supra at 1514; Fleming v. United States, supra at 1124; *541 sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Willful neglect means a conscious, intentional failure or reckless indifference. United States v. Boyle, supra at 245. We hold that petitioners have failed to prove that their failure to file was due to reasonable cause and not due to willful neglect. Accordingly, we sustain respondent's determination under section 6651(a) for all the years in issue. Respondent also determined an addition to tax for negligence under section 6653(a)(1)(A) and (B) for the 1986 and 1987 taxable years, section 6653(a) for the 1988 taxable year, and section 6662(a) for the 1989 taxable year. Respondent asserted that petitioners' underpayment of income taxes in each year was due to negligence or intentional disregard of rules or regulations. For 1986 and 1987, section 6653(a)(1)(A) imposes an addition to tax equal to 5 percent of the underpayment if any part of the underpayment is attributable to negligence, and section 6653(a)(1)(B) imposes an addition to tax equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence. For 1988, section 6653(a) imposes an addition to tax *542 equal to 5 percent of the underpayment if any portion of the underpayment is attributable to negligence. For 1989, section 6662(a) imposes an addition to tax equal to 20 percent of the portion of the underpayment attributable to negligence. Negligence includes a lack of due care or a failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Accardo v. Commissioner, 942 F.2d 444, 452 (7th Cir. 1991), affg. 94 T.C. 96 (1990); Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964); Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners bear the burden of proving that respondent's determination of negligence is erroneous. Rule 142(a); Accardo v. Commissioner, supra at 452; Stovall v. Commissioner, supra at 895; Marcello v. Commissioner, supra at 506-507; Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). *543 We hold that petitioners have failed to carry their burden, and sustain respondent's determination of additions to tax for negligence for all the years in issue. Respondent further determined an addition to tax under section 6654 for all the years in issue, asserting that petitioners failed to pay estimated tax. This addition to tax is mandatory unless petitioners prove that they have met one of the exceptions contained in section 6654. In re Stanford, supra at 1514; Recklitis v. Commissioner, 91 T.C. 874, 913 (1988). Petitioners have failed to show that any of the statutory exceptions apply. Accordingly, we sustain respondent's determination under section 6654 for all the years in issue. For the foregoing reasons, Decision will be entered under Rule 155. Footnotes
1. Petitioners were represented by Stuart L. Stein from the time that they filed their petition until Feb. 13, 1992; on this date, the Court allowed Mr. Stein to withdraw as petitioners' attorney of record. ↩
2. Petitioners did not keep adequate records to determine their income for any of the years in issue. In her determination of petitioners' deficiencies, respondent computed the income of each petitioner using a net worth method, with adjustments for nontaxable items of income and nondeductible expenditures, if any. Respondent computed Robert Hawkins' income as $ 714,184, $ 588,125, $ 226,459, and $ 1,215,390 for his 1986 through 1989 taxable years, respectively. Respondent computed Pamela Hawkins' income as $ 680,594, $ 551,188, $ 218,110, and $ 1,215,390 for her 1986 through 1989 taxable years, respectively.↩
3. Respondent's notice of deficiency issued to Robert Hawkins stated that he had Federal income tax withheld from wages for the 1986 through 1988 taxable years equal to $ 3,376, $ 3,204, and $ 981, respectively, and that these withheld amounts reduced the deficiencies shown for the corresponding taxable years. The Rule 155 computation will give him credit for these withheld taxes.↩
4. In the case at hand, petitioners claim that the personal injury lawsuit and settlement generated most of the unreported income alleged by respondent.↩
5. In regard to these allegations, we note that: (1) Pamela Hawkins made the decision to have an abortion without medical advice, (2) a medical doctor performed a voluntary abortion on Pamela Hawkins during April 1983, (3) the doctor found no signs of stress or trauma to either the fetus or Pamela Hawkins, and (4) following an examination of the fetus, the doctor concluded that the pregnancy was normal and of approximately 8 weeks duration.↩
6. Petitioners' sole assignment of error in their petition was respondent's "Failure to take into account a personal injury settlement in excess of $ 2,000,000, paid to the petitioners from 1985 to 1987". The Court only considers this assignment of error. Rule 34(b)(4) and (5); Rollert Residuary Trust v. Commissioner, 80 T.C. 619, 636 (1983), affd. 752 F.2d 1128 (6th Cir. 1985); Jarvis v. Commissioner, 78 T.C. 646, 658↩ (1982).